UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILY JOHNSON,
o/b/o D.J., a minor,

                Plaintiff,        Civil Action No. 13-11658
                                        Honorable Denise Page Hood
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 16]**

Emily Johnson brings this action on behalf of her minor daughter, D.J. ("Plaintiff"),[1] pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Plaintiff's Motion for Summary Judgment [11] be DENIED, and

---

[1] For convenience, the Court will refer to D.J., the minor child, as "Plaintiff" throughout this brief, although her mother, Emily Johnson, is the named plaintiff in this action.

that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.   REPORT

### A.   Procedural History

On November 16, 2010, an application for SSI was filed on behalf of Plaintiff, alleging a disability onset date of August 1, 1998.  (Tr. 116-21).  This application was denied initially on February 3, 2011.  (Tr. 73-76).  A timely request for an administrative hearing was filed on Plaintiff's behalf, and a hearing was held on March 22, 2012, before ALJ Earl Witten.  (Tr. 38-62).  Both Plaintiff and her mother appeared and testified at the hearing, represented by attorney Andrea Hamm.  (*Id.*).  On April 27, 2012, the ALJ issued a written decision finding that Plaintiff is not disabled.  (Tr. 15-26).  On March 7, 2013, the Appeals Council denied review.  (Tr. 1-5).  On behalf of Plaintiff, Ms. Johnson timely filed for judicial review of the final decision on April 12, 2013.  (Doc. #1).

### B.   Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §1382c(a)(3)(C)(i).  The Social Security regulations set forth a sequential three-step process for determining a child's disability claims:   first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of

the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. §416.926a. "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

3

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. §416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. §416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i).

    **C.    Evidence of Record**

        *1.    Disability Reports and Other Records*

Plaintiff was born on September 18, 1995, making her fifteen years old at the time her application for disability benefits was filed. (Tr. 134). In a disability report dated November 16,

4

2010, Ms. Johnson alleges that Plaintiff's disabling conditions include allergies to peanuts, seafood, fish, trees, grass, and "regular allergies."[2] (Tr. 138). Ms. Johnson indicated that Plaintiff had received treatment for asthma and allergies and was taking several medications for these conditions. (Tr. 138-39).

In a December 9, 2010 daily activities report, Ms. Johnson indicated that Plaintiff attended high school, enjoyed reading and watching television, and was very respectful to adults (but fought with her three brothers). (Tr. 143). She was not taking any special education classes and did not have any behavior problems at school. (*Id.*). She was able to help with household chores, including making her bed and folding laundry, although she did not dust because of her allergies. (Tr. 144).

A "teacher questionnaire" was completed in December of 2010 by Plaintiff's Spanish teacher, Erin Ormsby. (Tr. 147-54). Based on her observations, Ms. Ormsby opined that Plaintiff has problems with acquiring and using information; however, she did not provide any explanation or comment as to the severity of this impairment. (Tr. 148). Ms. Ormsby indicated that Plaintiff has no problems functioning in any other domain. (Tr. 149-53).

      2.     *The Administrative Hearing*

At the time of the March 22, 2012, hearing before the ALJ, Plaintiff was 16 years old. (Tr. 42). She testified that she lives in a house with her mother, her younger brother (who was 14 at the time), and her older brother (who was 24 and was "in and out" of the home). (Tr. 43). She helps with some household chores, although both dust and certain chemicals "mess with [her] allergies sometimes." (Tr. 43-44).

---

[2] Ms. Johnson testified that Plaintiff's mental impairments (anxiety and depression) surfaced in 2010, but she did not list these conditions on Plaintiff's application for benefits because she "didn't really feel that it was really a big problem at that point in time …." (Tr. 59-61, 138).

5

Plaintiff testified that she was in the eleventh grade and was a member of the National Honor Society. (Tr. 44). After her grandmother and aunt died, she began to struggle with school and has had difficulty concentrating because of her anxiety and depression. (Tr. 44-45, 52). She is not in special education classes, however. (Tr. 53). Plaintiff also testified that she is allergic to peanuts and fish and carries an EpiPen. (Tr. 46). Approximately once a week, she eats lunch in the office because peanut butter is served. (Tr. 47). Plaintiff testified that she does not really have any close friends, but she does interact with others at school and church. (Tr. 47-48). She does not have a boyfriend, although she does not think that is a result of her medical conditions. (Tr. 48).

Plaintiff testified that she experiences common allergy symptoms, such as itchy, watery eyes, runny nose, and sneezing. (Tr. 49). Although her doctor recommends allergy shots, she has declined this treatment because she does not like needles. (*Id.*). She takes several medications, but they do not cause any side effects. (Tr. 51). Even with medication, she sleeps only six or seven hours per night and feels tired in school, which she admits may contribute to her concentration difficulties. (Tr. 50).

Plaintiff's mother, Ms. Johnson, also testified at the administrative hearing. She indicated that she met with Plaintiff's school district, but was told that Plaintiff does not qualify for special education services. (Tr. 55, 261). The school does, however, provide Plaintiff with extra time to study and take quizzes and tests in math and science. (*Id.*). Ms. Johnson further testified that Plaintiff has been "[a] lot more closed off to herself," and she and her younger brother bicker more than they used to. (Tr. 57).

### 3. *Medical Evidence*

The administrative record contains medical records dating back to 1999 that reference asthma, seasonal allergies, and food and drug allergies. (Tr. 184-85, 192-93, 202-03, 210-11).

However, the records repeatedly refer to Plaintiff's asthma as "well-controlled" with medication, and there is no evidence of any emergency room visits or hospital admissions related to this condition. (Tr. 213, 226, 229, 231, 255, 298). With respect to her allergies, Plaintiff takes Singulair, Zyrtec, and Dulera daily and ProAir or Albuterol, via nebulizer, as needed. (Tr. 299). In addition, Plaintiff's doctor has suggested that she undergo immunotherapy injections to assist her in managing her allergies, but she has declined this treatment. (Tr. 218).

In January 2011, state agency examiners William Schirado, Ph.D., Jacob Weintraub, M.D., and K. Schneider, MS, CCC-SLP, reviewed Plaintiff's medical records and opined that Plaintiff had no limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulation of objects, and caring for herself. (Tr. 67-68). They further opined that Plaintiff had a less than marked limitation in the domain of health and physical well-being. (Tr. 68).

With respect to Plaintiff's mental impairments, the record contains evidence that Plaintiff treated with a psychiatrist and therapist at Summit Pointe from May 2011 through February 2012. (Tr. 261-87, 303-18). At Plaintiff's initial assessment on May 19, 2011, Ms. Johnson reported that Plaintiff's depression had begun approximately one year earlier when Plaintiff's aunt and grandmother passed away. (Tr. 279). Plaintiff was having difficulty sleeping and focusing and her grades were suffering. (*Id.*).

On August 11, 2011, Dr. Sajid Hussain conducted a psychological evaluation of Plaintiff. (Tr. 269-71). She presented with a depressed mood and constricted affect and reported having lost interest in activities she previously enjoyed. (Tr. 270). Dr. Hussain observed that Plaintiff had some insight into her illness, fair to poor judgment, and fair impulse control. (*Id.*). Plaintiff was diagnosed with major depressive disorder, single episode, and anxiety disorder and assigned

7

a Global Assessment of Functioning ("GAF")[3] score of 45. (*Id.*). She began taking Celexa for anxiety and depression and Trazodone for insomnia. (Tr. 271).

Plaintiff continued to see a therapist at Summit Pointe approximately once a month for the next few months. (Tr. 261-68). On December 12, 2011, Plaintiff had a medication review with Dr. Hussain, at which point Ms. Johnson reported that Plaintiff was "doing better" – eating and sleeping better – but her grades were still low. (Tr. 317). Plaintiff's Celexa was increased from 20 mg to 30 mg, and her diagnoses and GAF score remained the same. (Tr. 317-18). At her next medication review, on February 27, 2012, Plaintiff was again "doing better, eating and sleeping better, mood has been better." (Tr. 303). Her grades were improving, she was feeling proud of herself, and her mental status examination was "essentially normal." (*Id.*). There was no evidence of psychosis, mania, or depression; Plaintiff was pleasant, cooperative, and redirectable; she was alert and fully oriented. (*Id.*). Her medications were continued and she was assessed a GAF score of 55. (Tr. 303-04).

### D.   The ALJ's Findings

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 16, 2010, the application date. (Tr. 18). At Step Two, the ALJ found that Plaintiff has the following severe impairments: asthma, seasonal and food allergies, depression, and anxiety. (*Id.*). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (*Id.*). The ALJ also found that Plaintiff's impairments do not functionally equal any listing because she has less than marked limitations in the domains of acquiring and using information, interacting and relating with others, moving about and

---

[3] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

manipulating objects, and health and physical well-being, and no limitation in the domains of attending and completing tasks and caring for herself. (Tr. 18-26). Accordingly, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 26).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13;

9

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In her motion for summary judgment, Plaintiff does not actually argue that her impairments meet, medically equal, or functionally equal any listing.[4] (Doc. #11 at 7-11). Nor does Plaintiff challenge the ALJ's findings as to her limitations in any of the six functional domains. (*Id.*). Rather, Plaintiff argues only that the ALJ committed a technical error by failing to obtain expert opinion evidence related to whether she medically and/or functionally equaled a listed impairment. (*Id.*). The Court disagrees.

Plaintiff first argues that the ALJ erred when he concluded that she does not medically equal a listed impairment without obtaining an opinion from a medical expert on this issue. (*Id.*

---

[4] In fact, in the pre-hearing brief she submitted to the ALJ, Plaintiff conceded that the "medical documentation does not support the severity necessary to meet a Listing …." (Tr. 177). Rather, Plaintiff contended that "the medical conditions as a whole, supports a functional equivalence specifically, in the domain of health and physical well-being." (*Id.*).

at 7-9). Specifically, Plaintiff cites Social Security Ruling ("SSR") 96-6p for the proposition that a determination on medical equivalence generally requires reliance on expert opinion evidence. (*Id.* at 8 (citing *Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3 (July 2, 1996)). Plaintiff is correct that SSR 96-6p, as well as decisions from this judicial district, require a medical expert's opinion on the issue of equivalence:

> [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

*Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3; *see also Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at *4 (E.D. Mich. Sept. 25, 2013) (collecting cases). However, SSR 96-6p then explicitly recognizes that expert opinion evidence can take many forms, stating:

> The signature of a State agency medical or psychological consultant on a[] … Disability Determination and Transmittal Form … ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.

*Id.*

In this case, the record contains just such evidence. (Tr. 63-72). Specifically, the ALJ discussed and gave "some weight" to the January 2011 "Disability Determination Explanation" signed by state agency reviewing physicians William Schirado, Ph.D, Jacob Weintraub, M.D., and K. Schneider, MS, CCC-SLP. (Tr. 20, 63-72). In that determination, the reviewers considered Plaintiff's activities of daily living, along with evidence from her pediatrician, allergist, school reports, and a teacher questionnaire. (Tr. 64-66). Based on those records, the reviewers provided narrative summaries of the evidence, and opined that Plaintiff did not meet or medically equal a listing. (Tr. 63-71). The reviewers further opined that Plaintiff had a less than marked limitation in the domain of health and physical well-being and no limitations in any other

functional domain.[5] (Tr. 67-68). Accordingly, the state agency reviewers concluded that Plaintiff did not functionally equal a listing. (*Id.*).

Plaintiff acknowledges in a footnote that the state agency medical experts opined that she did not medically equal a listed impairment, but she argues that the ALJ could not properly rely on that opinion, and instead was required to obtain an updated medical opinion, because the reviewers had not considered the Summit Pointe mental health records submitted after their review. (Doc. #11 at 9, n. 2). Plaintiff's assertion misstates the law. SSR 96-6p addresses precisely this situation, providing that

> … an administrative law judge … must obtain an updated medical opinion from a medical expert … [w]hen additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

*Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3-4. In other words, an ALJ is required to obtain an updated medical expert opinion only if, in his opinion, the additional medical evidence received into the record may change the state agency consultant's finding on equivalence.

In her reply brief, Plaintiff argues that the rules "require review by a doctor, not a layperson," and that an ALJ should not be permitted to determine if the new evidence requires an updated medical opinion. (Doc. #17 at 4). This argument ignores the plain language of the applicable Ruling, however, which explicitly grants *the ALJ* the discretion to determine whether the newly-submitted evidence so changes the landscape of the claimant's impairments that an expert could now find them to medically equal a listing. *Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3-4. For this reason, Plaintiff's argument fails.

---

[5] The ALJ gave reduced weight to the state agency reviewers' opinion that Plaintiff was only limited in the domain of health and physical well-being because they did not have access to the mental health records submitted after the issuance of their opinion. (Tr. 20).

The record substantially supports the ALJ's implicit[6] determination that an updated medical determination was not required, and Plaintiff does not even attempt to argue that any findings from her medical records would possibly change the reviewing physicians' opinion on medical equivalence. (Doc. #11 at 7-11). The limited duration of Plaintiff's symptoms, and the marked improvement she experienced over a relatively short period of time due to treatment with therapy and medication, make clear that even if the state agency medical experts had reviewed the mental health records from the later period, their opinions would not have changed significantly. *See* 20 C.F.R. §416.929(c)(3)(iv). Courts have recognized that where a claimant's mental condition is treatable and controlled with medication, the claimant is not disabled. *See, e.g., Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("[Plaintiff's] mental condition was treatable and under control, and controllable conditions do not entitle one to benefits ….") (internal quotations omitted); *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Here, state agency consultants specifically opined that Plaintiff did not medically equal a listed impairment, and the ALJ adopted this opinion after giving full consideration to the subsequent evidence that was not available to these consultants. Clearly, the ALJ was not of the opinion that a finding of medical equivalence might be reasonable, or that the opinion of the state agency consultants on this issue might have changed in light of the medical evidence that postdated their opinion. Accordingly, the ALJ did not err in declining to obtain an updated

---

[6] The ALJ did not explicitly set forth this conclusion in his decision. However, Plaintiff was represented by counsel at the administrative hearing, and despite counsel's request to supplement the record with Plaintiff's mental health treatment records, neither Plaintiff nor her counsel raised any concern regarding the need for an additional medical opinion, nor did they request that the ALJ obtain an updated opinion. (Tr. 38-62). Moreover, the ALJ reviewed the supplemental records that were provided – noting in his opinion that he considered all of the record evidence pursuant to SSR 96-6p – and he explicitly concluded that they did not support Plaintiff's argument that she met or equaled a listing. (Tr. 18-23).

medical expert opinion.

Plaintiff also contends that the ALJ erred in failing to obtain the opinion of a medical expert on the issue of whether she functionally equaled a listed impairment. (Doc. #11 at 9-11). As set forth in detail above, however, the ALJ relied on the state agency reviewing physicians' opinion, contained in the Disability Determination Explanation, in concluding Plaintiff's impairments did not functionally equal a listed impairment. (Tr. 20-26, 67-68). This was sufficient.[7] *See Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3.

In addition to the state agency reviewers' opinion, the ALJ also relied on Plaintiff's school records, the objective medical evidence, and the hearing testimony in determining that Plaintiff's impairments did not functionally equal a listing. For example, the ALJ noted that Plaintiff began treatment for depression in May 2011, shortly after her aunt and grandmother had died. (Tr. 20, 26, 303). By February 2012, however, Plaintiff's treating psychiatrist, Dr. Hussain, noted that her mental health limitations were well-controlled with therapy and medication, and her symptoms had improved. (*Id.*). At that time, Plaintiff was "doing better, eating and sleeping better, mood has been better." (Tr. 20, 303). Her grades were improving, she was feeling proud of herself, and her mental examination was "essentially normal," with no evidence of psychosis, mania, or depression. (*Id.*). The ALJ gave significant weight to Dr.

---

[7] SSR 96-6p, which requires an ALJ to obtain an updated medical expert opinion under certain circumstances, does not apply when an ALJ is considering whether a child's impairment functionally equals a listing. Specifically, SSR 09-1p provides as follows: "While SSR 96-6p requires that an ALJ … must obtain an updated medical expert opinion before making a decision of disability based on medical equivalence, there is no such requirement for decisions of disability based on functional equivalence. Therefore, ALJs … are not required to obtain updated medical expert opinions when they determine that a child's impairment(s) functionally equals the listings." *Soc. Sec. Rul. 09-1p*, 2009 SSR LEXIS 1, 28-29 (Mar. 19, 2009). In other words, SSR 96-6p can require a medical expert to provide a fresh review of the record when *medical* equivalence is at issue, but it does not apply to the *functional* equivalence analysis. *See Edwards v. Colvin*, 2013 WL 3934228, at *5 (N.D. Ill. July 30, 2013).

Hussain's opinion, noting that he had personally examined Plaintiff and that his opinion was supported by the record as a whole.[8] (Tr. 20).

The ALJ also gave "some weight" to the December 2010 opinion of Plaintiff's Spanish teacher, Erin Ormsby. (Tr. 20, 147-54). Ms. Ormsby completed a check-box form indicating that Plaintiff had unidentified problems in the domain of acquiring and using information, but she then ambiguously marked "no problem" in each of the sub-activities included in this functional domain. (Tr. 148). Ms. Ormsby further opined that Plaintiff had no problems in any of the other functional domains. (Tr. 149-53). The ALJ noted that Ms. Ormsby spent significant time with Plaintiff and was in a position to opine as to her school-related abilities, but he gave her opinion reduced weight because it included no explanation as to the severity of Plaintiff's limitation, and because it was less restrictive than the ALJ believed was indicated by the record as a whole.[9] (Tr. 20).

In the face of all of this evidence, Plaintiff does not actually challenge the ALJ's thoroughly discussed findings as to any of the six domains of functioning, nor does she point to any evidence suggesting that the ALJ's conclusions were erroneous. In summary, the ALJ properly took into account all of the evidence in the record, including the objective medical evidence, reports from Plaintiff's teachers, opinion evidence, and hearing testimony, and reached a well-supported decision that Plaintiff's impairments did not medically or functionally equal a listed impairment. This conclusion is supported by substantial evidence.

---

[8] Plaintiff appears to contend that the ALJ could not properly rely on Dr. Hussain's opinion because it was not "couched … in terms of the 'domains.'" (Doc. #11 at 10). However, Plaintiff cites no case law for this proposition, and the Court is not aware of any such restriction on an ALJ's consideration of a physician's treatment records and opinions.

[9] Plaintiff's argument that Ms. Ormsby "indicated that she lacked information sufficient to complete the Agency form" is without merit. (Doc. #11 at 10). Ms. Ormsby indicated only that she did not have a basis to evaluate Plaintiff's ability to comprehend and do math problems and apply problem solving skills in class discussions. (Tr. 148).

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[16]** be **GRANTED**, Plaintiff's Motion for Summary Judgment **[11]** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

| | |
|---|---|
| Dated: August 1, 2014<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 1, 2014.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
